UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANTON F. LIVERPOOL,

                Plaintiff,

– against –

THE CITY OF NEW YORK, KISA SMALLS, MARCIA VAUGHN, ASSISTANT DEPUTY WARDEN AINSWORTH FOO, CAPTAIN DELILAH HOPE, ERNESTO VALLEJOS, OFFICER MILTON HOSSEN, *and* DEPUTY WARDEN CHANTELLE JOHNSON,

                Defendants.

**OPINION & ORDER**

20 Civ. 4664 (ER)

RAMOS, D.J.:

      Anton Liverpool, proceeding *pro se*, commenced this action pursuant to 42 U.S.C. § 1983 against the City of New York; Warden Kisa Smalls; Correction Officers Marcia Vaughn, Ernesto Vallejos, and Milton Hossen; Assistant Deputy Warden Ainsworth Foo; Captain Delilah Hope; and Deputy Warden Chantelle Johnson (collectively, "Defendants"),[1] bringing claims related to an incident that took place on the night of September 2, 2018, while he was incarcerated at Rikers Island.  Doc. 56.  Defendants bring the instant motion to dismiss Liverpool's Third Amended Complaint ("TAC") in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  Doc. 61.  For the reasons set forth below, Defendants' motion is GRANTED.

---

[1] Captain Delilah Hope has not appeared in this action or responded to Liverpool's Third Amended Complaint.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

The Court accepts the following allegations as true for purposes of this motion.[2] On the night of September 2, 2018, Liverpool was incarcerated at the Anna M. Kross Center ("AMKC"), a New York City Department of Corrections ("DOC") facility on Rikers Island. Doc. 56. Between 11:00 p.m. on September 2 and 7:00 a.m. on September 3, Correction Officers Ernesto Vallejos, Milton Hossen, and Marcia Vaughn were stationed where Liverpool was being housed. *Id.* at 1, 2. The three C.O.s allegedly neglected to ensure that the inmates in that unit had not obstructed the locks on the cell doors so as to prevent them from locking. *Id.* at 1. C.O. Vaughn also allegedly turned off the hallway lights so that the inmates could go to sleep, but these lights were required to be kept on so that staff could surveille the area while on post. Doc. 71 at 3. At approximately 3:00 a.m. on September 3, an inmate was able to exit his cell and assault Liverpool by tossing a mixture of cleaning fluids in Liverpool's eyes while he slept in his cell. Doc. 56 at 1.

In his initial Complaint, Liverpool identifies this attacker by name and describes him as someone who, along with other inmates, had regularly made threats to Liverpool in the presence of officers. Doc. 1 at 5. Liverpool alleges that these inmates followed through on their threats, but he does not provide specific details in his initial Complaint. *Id.* Although the officers were allegedly aware of the threat to Liverpool's safety due to the nature of the criminal charges against him, which involved the sexual assault of minors, he was placed in a unit that left him vulnerable to being harassed, threatened, and assaulted by other inmates. *Id.* In his opposition, Liverpool further alleges that officers had incited and paid inmates to assault him, that officers knew of the prior attacks against him, including prior instances of having cleaning fluids thrown

---

[2] Some of the allegations are from Liverpool's original Complaint and opposition papers. "Courts have held that it may be appropriate to consider materials outside of the Complaint in the *pro se* context . . . and, in particular, materials that a *pro se* plaintiff attaches to his opposition papers[.]" *Ceara v. Deacon*, No. 13 Civ. 6023 (KMK), 2014 WL 6674559, at *8 (S.D.N.Y. Nov. 25, 2014) (internal citations omitted) (emphasis added); *see also Rodriguez v. McGinnis*, 1 F. Supp. 2d 244, 246–47 (S.D.N.Y. 1998) ("Although material outside a complaint generally is not to be taken into consideration on a motion to dismiss, the policy reasons favoring liberal construction of *pro se* complaints permit a court to consider allegations of a *pro se* plaintiff in opposition papers on a motion where, as here, those allegations are consistent with the complaint.").

2

into Liverpool's cell by the same individual and others, that he was being housed with at least five inmates charged with murder, and that his housing area was used as a dumping ground for inmates who posed a threat to others.[3]  Doc. 71 at 1, 3.

DOC's administrative staff allegedly was also fully aware of a potential security breach due to a history of inmates obstructing the cell locks.  Doc. 56 at 1.  AMKC administrative staff had to repeatedly send in security to remove these obstructing objects because inmates had been exiting their cells during the 11:00 p.m. to 7:00 a.m. tour.  *Id.* at 2.  However, this was not done the night Liverpool was assaulted.  Liverpool alleges that Warden Kisa Smalls, Deputy Warden Chantelle Johnson, and Assistant Deputy Warden Ainsworth Foo were responsible for making sure officers on duty in Liverpool's housing area checked the locks for these obstructions.  *Id.*  Due to the negligence of Defendants, Liverpool suffered burning and temporary and partial blindness to his eyes for several days.  *Id.*

On June 17, 2020, Liverpool, now incarcerated in Rhode Island, filed the initial Complaint, seeking $250,000 in compensatory and punitive damages plus costs and attorney fees, and naming the City, Vaughn, and seven unidentified "John Doe" officers as defendants.  Doc. 1 at 1, 5.  On August 7, 2020, the Court directed the City to provide Liverpool with the identities of the "John Doe" defendants.  Doc. 7 at 3–4.  Between August 7, 2020 and September 15, 2021, the City identified all but one of the "John Doe" defendants pursuant to a *Valentin* order.[4]  Docs. 12, 18, 22, 43, 45, 47, 49, 52.  On March 23, 2021, Liverpool amended the Complaint.  Doc. 35.  Liverpool amended the Complaint a second time on March 29, 2021.  Doc. 36.  On October 20, 2021, Liverpool filed the TAC.  Doc. 56.  On December 27, 2021, Defendants filed the instant motion to dismiss for failure to state a claim.  Doc. 61.

---

[3] Although Liverpool repeatedly asserts that he previously made such allegations to the Court, these allegations were raised for the first time in his opposition.

[4] Liverpool later named John Doe #7 as "Captain Christian" (phonetically).  Doc. 27 at 1.  However, Defendants were unable to identify John Doe #7, and the Court relieved Defendants of the obligation to identify this John Doe.  Doc. 53.

## II. LEGAL STANDARD

### A. Rule 12(b)(6)

When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). The court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also id.* at 681 (citing *Twombly*, 550 U.S. at 551). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 680.

The question in a Rule 12 motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 278 (2d Cir. 1995)). "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits,'" and without regard for the weight of the evidence that might be offered in support of the plaintiff's claims. *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)).

### B. *Pro Se* Plaintiff

The Court holds submissions by *pro se* litigants to "less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (per curiam) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)); *see also Young v. New York City Dep't of Educ.*, No. 09 Civ. 6621 (SAS), 2010 WL 2776835, at *5 (S.D.N.Y. July 13, 2010) (noting that the same principles apply to briefs and opposition papers filed by *pro se* litigants). Although "*pro se* status 'does not exempt a party from compliance with relevant rules of procedural and substantive law,'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)), courts read the pleadings and opposition papers submitted by *pro se* litigants "liberally and interpret them 'to raise the strongest arguments that they suggest,'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). The obligation to read a *pro se* litigant's pleadings leniently "applies with particular force when the plaintiff's civil rights are at issue." *Jackson v. NYS Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)).

### III. DISCUSSION

#### A. Failure to Protect Claim

Defendants argue that Liverpool did not assert a claim that his constitutional rights were violated, and that even if the Court infers a Fourteenth Amendment failure to protect claim, the TAC must be dismissed because Liverpool has not adequately pled such a claim. Section 1983 allows an individual to bring suit against persons who, acting under color of state law, have "depriv[ed him] of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983; *West v. Atkins*, 487 U.S. 42, 48 (1988). The statute "itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Okla. City v. Tuttle*, 471 U.S. 808, 816 (1985)).

A prison official's failure to protect a prisoner from harm may form the basis of a Section 1983 claim. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Prison officials are responsible for the safety of prison inmates; however, "[not] every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for [the] prison officials [involved]." *Id.* at 834. Rather, prison officials violate constitutional protections when two conditions are satisfied: (1) the alleged deprivation must, objectively speaking, be "sufficiently serious," and (2) the alleged perpetrator must possess a "sufficiently culpable state of mind." *Id.* (citations and internal quotation marks omitted). In the prison setting, "courts have defined this culpability as 'deliberate indifference' to the health and safety of inmates." *Randle v. Alexander*, No. 10 Civ. 9235 (JPO), 2013 WL 2358601, at *5 (S.D.N.Y. May 30, 2013) (citing *Farmer*, 511 U.S. at 834). This deliberate indifference standard is evaluated under a two-pronged test comprised of both objective and subjective components. *Jackson v. Goord*, 664 F. Supp. 2d 307, 315–16 (S.D.N.Y. 2009) (citing *Farmer*, 511 U.S. at 834).

Under the objective prong of the deliberate indifference test, "the measure of a 'sufficiently serious' deprivation is 'contextual and responsive to contemporary standards of decency.'" *Id.* at 316 (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). In determining whether a risk of harm is unreasonable, a court must assess whether the risk is "so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Helling v. McKinney*, 509 U.S. 25, 36 (1993) (emphasis in original). Thus, to satisfy the objective element and survive a motion to dismiss, Liverpool must allege that his conditions of incarceration posed a substantial risk of serious harm.

Here, Liverpool alleges that attacks, and threats of attack, by other inmates against him were an ongoing problem, exacerbated by their ability to leave their cells by obstructing the locks of their cell doors. Liverpool also alleges that he was a target of other inmates due to the fact that the criminal charges against him involved the assault of minors, and that dangerous inmates were often housed in his area. Defendants argue that the physical separation of inmates

6

in separate cells precludes a finding that Liverpool was subjected to a serious risk of harm. And, while Liverpool claims the cleaning fluids caused serious injury, there was no plausible reason to believe that the possession by other inmates of typically inoffensive cleaning fluids presented a risk of serious injury before the attack. That is, Defendants argue no officer could have reasonably foreseen that such an attack involving these fluids would cause the harm Liverpool allegedly suffered, especially given the fact that he was asleep and behind the bars of his locked cell at the time of the assault.

However, Liverpool alleges that he knew his assailant by name before the attack, given that they lived in the same housing area for months, and that the same individual had attacked him on prior occasions. "A substantial risk of serious harm can be demonstrated where there is evidence of a previous altercation between a plaintiff and an attacker, coupled with a complaint by plaintiff regarding the altercation or a request by plaintiff to be separated from the attacker." *Gilmore v. Rivera*, No. 13 Civ. 6955 (RWS), 2014 WL 1998227, at *3 (S.D.N.Y. May 14, 2014). Additionally, in certain circumstances, such claims can also exist "in the absence of any allegation of a history of altercations between the plaintiff and his attacker." *Blake v. Kelly*, No. 12 Civ. 7245 (ER), 2014 WL 4230889, at *5 (S.D.N.Y. Aug. 26, 2014). Given Liverpool's familiarity with his attacker, and the alleged prior threats and attacks, his allegations could conceivably raise a factual question as to whether a substantial risk of serious harm existed. But, it is not enough for these allegations to only satisfy the objective prong of Liverpool's Section 1983 claim, as they must satisfy the subjective prong as well.

For the subjective component of the failure to protect claim, Defendants argue that Liverpool fails to allege that any of them were deliberately indifferent to the risk of serious harm. Under the subjective element, a prisoner can recover only if the injury was a product of the prison official's "purposeful subjection of the prisoner to a 'substantial risk of serious harm' or from the official's deliberate indifference to that risk." *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997) (quoting *Farmer*, 511 U.S. at 834). An official acts with deliberate indifference when he "knows of and disregards an excessive risk to inmate health or safety; the official must both

7

be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Cuoco v. Moritsugu*, 222 F.3d 99, 107 (2d Cir. 2000) (citation omitted).

"[T]o state a cognizable section 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice." *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996). As Defendants note, in the TAC, Liverpool only alleges negligence on their part, which does not rise to the level of "purposeful" action or "deliberate indifference." However, in his opposition, Liverpool alleges that officers incited inmates to assault him, that he was housed with individuals charged with murder or were otherwise dangerous, and that officers knew of prior attacks, including the throwing of fluids into Liverpool's cell by the same individual. Given the liberal standard for construing allegations by *pro se* litigants, the Court could conceivably infer that Liverpool intended to make a Fourteenth Amendment failure to protect claim.

However, Liverpool makes only vague and conclusory allegations regarding some unidentified officers' awareness of prior attacks, including by the same individual; he does not provide any details on the dates or nature of the alleged prior attacks. Nor does he specify which Defendants, if any, were aware of such attacks. Similarly, he does not provide any allegations regarding his claim that unidentified officers incited and paid inmates to assault him. Moreover, while Liverpool alleges that Defendants failed to check the cell door locks and that C.O. Vaughn turned off the lights, he does not allege that these specific Defendants were the officers who knew about previous threats, or that they were the ones who paid or incited inmates to assault him. "[A]n isolated omission to act by a state prison guard does not support a claim under § 1983 absent circumstances indicating an evil intent, or recklessness, or at least deliberate indifference to the consequences of his conduct for those under his control and dependent upon him." *Knowles v. New York City Dep't of Corr.*, 904 F. Supp. 217, 221 (S.D.N.Y. 1995) (quoting *Ayers v. Coughlin*, 780 F.2d 205, 209 (2d Cir. 1985)). Given the isolated nature of the incident involving these Defendants, their conduct does not amount to a constitutional violation.

8

Thus, to the extent that Liverpool alleges a Fourteenth Amendment violation by Defendants, the claim is dismissed.

### B. Qualified Immunity

Defendants argue that, even if this Court infers a Fourteenth Amendment failure to protect claim, it should grant Defendants qualified immunity. Docs. 62, 75. A government official sued in his individual capacity is entitled to qualified immunity (1) if the conduct attributed to him was not prohibited by federal law; (2) where the conduct was so prohibited, if the plaintiff's right not to be subjected to such conduct by the defendant was not clearly established at the time it occurred; or (3) if the defendant's action was objectively legally reasonable in light of the legal rules that were clearly established at the time it was taken. *Manganiello v. City of New York*, 612 F.3d 149, 164 (2d Cir. 2010) (internal citations omitted). As described above, Liverpool alleges that one of the Defendants turned off the lights and that they otherwise failed to check the cell door locks. However, even if Liverpool adequately alleges his Section 1983 claim, which he does not, the Defendants are entitled to qualified immunity.

Defendants' qualified immunity argument succeeds on the third prong of the test because their actions were objectively reasonable in light of clearly established legal rules regarding the circumstances present here. "In the prison context, the clearly established standard for this claim is that the official acted with deliberate indifference toward the safety of the prisoner." *Gordon v. City of New York*, No. 05-0351-PR, 2005 WL 2899863, at *1 (2d Cir. Nov. 3, 2005) (citing *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 620–21 (2d Cir. 1996)). As set forth above, Liverpool fails to sufficiently allege that any of the Defendants acted unreasonably. The substantial deference due to prison officials allows them to use their professional judgment to reach experience-based conclusions that work to further prison objectives. *Beard v. Banks*, 548 U.S. 521, 533 (2006). Considering both the objective reasonableness of Defendants' actions and the absence of a clearly established right, Defendants are entitled to qualified immunity with respect to Liverpool's claims.

### C. *Monell* Claim

Though Liverpool does not explicitly allege a *Monell* claim, this Court infers such a claim from his complaints and opposition papers. Although a municipality cannot be held liable under Section 1983 solely on a theory of *respondeat superior*, a Section 1983 claim may be brought against a municipality if the alleged unconstitutional action was the result of an official policy, practice or custom. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690–92 (1978). The Second Circuit has established a two-prong test for Section 1983 claims brought against a municipality. First, the plaintiff must prove "the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving [official]." *Johnson v. City of New York*, No. 06 Civ. 9426 (GBD), 2011 WL 666161, at *3 (S.D.N.Y. Feb. 15, 2011) (quoting *Vippolis v. Village of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985)). Second, the plaintiff must establish a causal connection between the policy or custom and the alleged deprivation of his constitutional rights. *Id.*

To satisfy the first prong of the municipal liability test, a plaintiff must allege the existence of at least one of the following elements: (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation; (3) a practice so consistent and widespread that constitutes a custom or usage of which a supervising policymaker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees. *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (internal citations omitted).

As a threshold matter, Liverpool fails to adequately plead a violation of his underlying constitutional rights. Nevertheless, even if the Court had found such a violation, Liverpool fails to meet any of the requisite elements to satisfy the first prong of a municipal liability claim. Liverpool alleges that Defendants failed to check the cell doors for obstructions, and that Vaughn

10

turned off the lights in the housing area. Liverpool submits no allegations to indicate the existence of either a formally recognized policy or a consistent and widespread practice adopted by the City. Further, Liverpool neither alleges that the prison officials have policymaking authority nor claims that the City was deliberately indifferent in failing to train and supervise its employees. Without any factual support for Liverpool's conclusory allegations, this Court cannot "infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. Therefore, Liverpool's claims against the City must be dismissed as well.

### D. Negligence Claim

Liverpool alleges negligence on the part of the officers and their supervisors.[5] Defendants originally asked the Court to decline to exercise supplemental jurisdiction. But, as Defendants now concede in their reply brief, the Court has diversity jurisdiction because Liverpool initiated this action while incarcerated in Rhode Island, none of Defendants are citizens of Rhode Island, and Liverpool seeks more than $75,000. *See* 28 U.S.C. § 1332. However, Defendants argue that this claim should be dismissed because Liverpool did not file a timely notice of claim nor did he comply with the applicable statute of limitations. Doc. 75 at 9.

Under New York General Municipal Law § 50-i(1)(c), Liverpool was required to commence his claim against Defendants within one year and ninety days after the claim arose. According to the TAC, Defendants' negligence occurred, at the latest, on September 3, 2018. Therefore, the statute of limitations expired on December 2, 2019, but Liverpool did not file suit until June 17, 2020. Accordingly, Liverpool's negligence claims are time-barred.

Furthermore, Liverpool does not dispute that he failed to file a timely notice of claim. "New York General Municipal Law Section 50 requires that before a plaintiff asserts state tort claims against a municipal entity or its employees, he must serve a notice of claim within ninety days after the claim arises." *Garcia v. City of New York*, No. 15 Civ. 7470 (ER), 2018 WL

---

[5] The Court infers negligence claims under Section 1983 from Liverpool's allegations. However, because negligence is insufficient to support a Section 1983 claim, the Court will interpret these claims as state law claims. *See Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996).

2085335, at *6 (S.D.N.Y. May 3, 2018) (citing N.Y. Gen. Mun. Law §§ 50-e, 50-i). Instead, Liverpool argues that he was unable to file a notice of claim because he was "extradited" to Rhode Island. Regardless, Liverpool's negligence claims are time-barred, and as such, they are dismissed.

### E. Leave to Amend the Complaint

Although Liverpool has not requested leave to amend the TAC, the Court has considered whether he should be given that opportunity. The Second Circuit has explained that "[a] *pro se* complaint is to be read liberally. Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco*, 222 F.3d at 112 (citation omitted). Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, the "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2).

Under this liberal standard, the Court finds that Liverpool may yet be able to assert a plausible Section 1983 claim in an amended pleading. Though Liverpool has had the opportunity to amend the Complaint three times, this is the first time the Court has considered his allegations. Therefore, Liverpool's TAC will be dismissed without prejudice. The Court directs Liverpool to submit an amended complaint, if at all, by no later than November 2, 2022.

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is GRANTED without prejudice. Liverpool must file his Fourth Amended Complaint, if at all, by November 2, 2022. The Clerk of Court is respectfully directed to terminate the motion, Doc. 61, and mail a copy of this Order to Liverpool.

SO ORDERED.

Dated: September 28, 2022
       New York, New York

_____
Edgardo Ramos, U.S.D.J.