UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANTON F. LIVERPOOL,

              Plaintiff,

– *against* –

THE CITY OF NEW YORK, KISA
SMALLS, MARCIA VAUGHN,
ASSISTANT DEPUTY WARDEN
AINSWORTH FOO, CAPTAIN
DELILAH HOPE, ERNESTO
VALLEJOS, OFFICER MILTON
HOSSEN, *and* DEPUTY WARDEN
CHANTELLE JOHNSON,

              Defendants.

**OPINION & ORDER**

20-cv-4664 (ER)

RAMOS, D.J.:

      Anton Liverpool, proceeding *pro se*,[1] commenced this action pursuant to 42

U.S.C. § 1983 against the City of New York; Warden Kisa Smalls; Correction Officers

Marcia Vaughn, Ernesto Vallejos, and Milton Hossen; Assistant Deputy Ainsworth Foo;

Captain Delilah Hope; and Deputy Warden Chantelle Johnson (collectively,

"Defendants"),[2] alleging that they violated the Due Process Clause of the Fourteenth

Amendment by failing to protect him while he was incarcerated at Rikers Island from

August 3, 2017, until September 6, 2018.  Doc. 95.  Defendants filed the instant motion to

dismiss Liverpool's Fourth Amended Complaint ("FAC") in its entirety for failure to state

a claim.  Doc. 98.  For the reasons set forth below, the motion is denied as to Officer

Vaughn but granted as to the remaining Defendants.

---

[1] Liverpool's response to the instant motion to dismiss was prepared with the assistance of the New York
Legal Assistance Group's Legal Clinic ("NYLAG"), though the organization does not represent him.

[2] Captain Hope has not appeared in this action.

I.      BACKGROUND

A.  Factual Background[3]

Liverpool was incarcerated in the Anna M. Kross Center ("AMKC"), a New York City Department of Corrections ("DOC") facility on Rikers Island, from August 3, 2017 until September 6, 2018.  Doc. 1 at 1; Doc. 94-1 at 62.  All of the cells in Liverpool's cellblock have solid doors with openings for food trays to be passed through them.[4]  Doc. 95 at 1.

1.  Liverpool's 311 Complaints

While at the AMKC, Liverpool called the Office of Constituent and Grievance Services' ("OCGS") 311 Call Center (the "Call Center") at least thirteen times to file complaints, described below, regarding various incidents that took during his incarceration.[5]  Doc. 94-1.

- On August 14, 2017, shortly after arriving at the AMKC, Liverpool alleged he discovered a piece of hard plastic in his food.  He reported the incident to Officer Kitt and Officer Kirk, neither of whom are defendants.  *Id.* at 1–4, 18.  The OCGS was unable to verify the allegation.  *Id.* at 20–22.

- On August 24, 2017, Liverpool complained that his vegan meals were being withheld.  *Id.* at 5–8.

- Also on August 24, 2017, Liverpool separately complained that had difficulty contacting his lawyer.  *Id.* at 9–11.

- On August 29, 2017, Liverpool alleged that his meals were being provided without soy milk (as required by his vegan diet).  *Id.* at 12–14.

- On November 9, 2017, Liverpool asserted that he was involved in a bus accident and was denied medical treatment thereafter.  *Id.* at 23–26.

---

[3] The facts recited herein are taken from the allegations in the FAC.  Doc. 95.  As Liverpool is *pro se*, the Court also considers the allegations in Liverpool's opposition brief, Doc. 112, that are consistent with the FAC.  *Rodriguez v. McGinnis*, 1 F. Supp. 2d 244, 246–47 (S.D.N.Y. 1998) (citing *Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987)).

[4] The record is silent as to the size of the openings apart from an indication that they are roughly five feet off the ground.  Doc. 112 at 11.

[5] Defendants produced a document compiling summaries generated by the DOC regarding Liverpool's calls to the Call Center while he was at the AMKC.  Doc. 94-1.  Liverpool relied on this compilation in drafting the FAC, refers to the summaries multiple times, and attached six pages of the compilation to the FAC.  *See* Doc. 95 at 12–17.  The Court considers these 311 complaint summaries in their entirety.  *See Clemmons v. Hodes*, No. 15-cv-8975 (KPF), 2017 WL 4326111, at *1 n.2 (S.D.N.Y. Sept. 26, 2017) (citing *Rothman v. Gregor*, 220 F.3d 81, 88–89 (2d Cir. 2000) and *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004)).

- On November 21, 2017, Liverpool reported that officers were "continually trying to intimidate" him because of a rumor that he was a rapist.  He also complained that Officer Tegal, who is not a defendant in this case, came to his cell and asked if he was masturbating.  *Id.* at 31–34.

- On November 24, 2017, Liverpool complained that Officer Curt, who is not a defendant in this case, refused to issue him a property receipt for an article of clothing and denied him recreation.  *Id.* at 27–30.

- On December 4, 2017, Liverpool requested a transfer, explaining that he felt "uneasy" that Officer Kirk, who is not a defendant in this case, "might do something to him."  *Id.* at 35–37.

- On March 28, 2018, Liverpool reported that he was involved in another bus accident and that Officer Supris, who is not a defendant in this case, refused to provide him with information regarding what the bus driver hit.  *Id.* at 38–41.

- On June 6, 2018, Liverpool reported that someone withdrew funds from his account without authorization.  *Id.* at 42–43.  The incident was investigated, and it was determined that the funds were deducted for Court filing fees.  *Id.* at 50–52.

- On August 29, 2018, Liverpool claimed that "Officer #3320[6] . . . [insinuates] that [he] masturbates to her.  She wants other inmates to beat him up . . . Officer Broome [] does the same."  *Id.* at 53–56.  Neither Officer Stimphil nor Officer Broome are defendants in this case.

- Liverpool alleged that on September 3, 2018, someone entered his cell and "threw unknown liquid" into his eyes and that he believed officers were "encouraging other inmates to start trouble with him."  *Id.* at 57–60.

- On September 24, 2018, Liverpool claimed that someone stole his commissary pass and had been taking money out of his account.  *Id.* at 61–64.

As the above descriptions make clear, none of Liverpool's complaints to the OCGS mentioned any of the Defendants, and only one, filed on September 3, 2018, alleges that Liverpool suffered an assault by other inmates.[7]

---

[6] Officer #3320 is identified as Officer Stimphil.  Doc. 94-1 at 54; Doc. 95 at 4 (identifying "Stemphill" by reference to "#3320").

[7] Liverpool asserts—and the Court accepts as true on this motion—that the compilation of 311 complaint summaries the Defendants produced do not reflect all the 311 complaints that Liverpool filed.  Doc. 95 at 3. Liverpool also alleges that these 311 complaint summaries are edited because the DOC has a policy of reducing them to only twenty-five words each.  *Id.*; Doc. 91 at 1.  The Court notes, however, that every one of these thirteen 311 complaint summaries exceeds twenty-five words, some nearing or exceeding one hundred words.  *See e.g.*, Doc. 94-1 at 35, 39, 62.

2. *The September 3 Attack*

Between 11:00 pm on September 2, 2018, and 7:00 am on September 3, 2018, Officers Vallejos, Hossen, and Vaughn were stationed in Liverpool's cellblock.  Doc. 95 at 2.  The three officers allegedly knew that inmates regularly exited their cells at night if their cells were not checked for obstructions, which prevented their cell doors from locking.  *Id.* at 6.  Notwithstanding their knowledge of this potential security breach, they neglected to ensure that no obstructions prevented inmates' cells from locking on the night of September 2, 2018.  *Id.* at 2.  Additionally, Officer Vaughn turned off the hallway lights, *id.* at 4, even though they were required to be kept on,[8] Doc. 71 at 3.  Warden Kisa Smalls, Deputy Warden Chantelle Johnson, and Assistant Deputy Warden Ainsworth Foo also allegedly knew that inmates would escape their cells if they were not checked for obstructions, Doc. 112-1 at 2, and were responsible for sending officers on duty to check the locks, Doc. 95 at 6.

At approximately 3:00 am on September 3, 2018, another inmate named Jeremy Bethune[9] (having placed an obstruction in his cell door, which prevented it from locking) exited his cell and threw a mixture of cleaning fluids through the open slot in Liverpool's cell door, which splashed into his eyes (the "September 3 Attack").  *Id.* at 1.  This attack left Liverpool with severe burning in his eyes, temporary blindness, and a significant distortion in his vision that lasted several days.  *Id.* at 7.  At 11:15 am that morning, Liverpool called the Call Center and complained that during the night, "someone came in

---

[8] In the FAC, Liverpool alleges that Officer Vaughn turned off the lights to compensate inmates who harassed and assaulted Liverpool by allowing them greater freedom at night.  Doc. 95 at 4.  This characterization is contrary to Liverpool's prior assertions that Officer Vaughn turned off the hallway lights to allow officers and inmates to fall asleep more easily.  Doc. 35 at 5; Doc. 71 at 3.  The Court "may disregard amended pleadings when they directly contradict facts that have been alleged in prior pleadings." *Kilkenny v. Law Off. of Cushner & Garvey, L.L.P.*, No. 08-cv-0588 (KMK), 2012 WL 1638326 at *5 (S.D.N.Y. May 8, 2012) (collecting cases).

[9] Liverpool repeatedly refers to an inmate named "Bethume."  *See e.g.*, Doc. 95 at 1.  Defendants identify the inmate as Jeremy Bethune.  Doc. 99 at 8.

[his] cell and threw unknown liquid in his eyes" and that he believed "officers [were] encouraging other inmates to start trouble with him."  Doc. 94-1 at 57–58.

   3.   *New Allegations in the FAC*

   In the FAC, Liverpool newly alleges that between August 2017 and September 2018, he was repeatedly assaulted and harassed by the staff and other inmates because of a rumor that he was a rapist.  Doc. 95 at 5.  Officer Stimphil allegedly accused Liverpool of being a pervert, a rapist, and a child molester, which provoked inmates to do the same. *Id.*  Liverpool asserts that on six different occasions, Bethune attacked Liverpool— sometimes in front of Officer Vaughn.  *Id.* at 7.  Bethune and an inmate, named "Castillo,"[10] would frequently threaten Liverpool that they were going to rape him.  *Id.* at 9.  At some point during his tenure at the AMKC, Liverpool claims that Castillo ejaculated into Liverpool's food before he unknowingly ate it.  *Id.* at 8.  Liverpool alleges that Castillo then bragged about this vulgar act to Officer Vaughn and other staff members, who allowed Castillo to continue serving Liverpool his food.  *Id.*  Liverpool asserts that Officer Vaughn witnessed these abuses "night after night" and laughed about them.  *Id.* at 5.  Liverpool contends that Officer Vaughn even compensated inmates for harassing and abusing him by allowing them to "run amok" outside their cells at night and to freely smoke marijuana and tobacco.  *Id.* at 4.  All the Defendants allegedly knew that Liverpool was a target of harassment and abuse for the staff and other inmates.  *Id.* at 6.

   After the September 3 Attack, Liverpool now alleges that the Defendants were "even more indifferent" to his safety, as he continued to be harassed by Bethune and others, who threw urine and cleaning fluids into his cell daily.  *Id.* at 8.  On one occasion, Liverpool claims that Bethune and Castillo besieged him by throwing urine, feces, cleaning fluids, and other objects into his cell for six hours.  *Id.*

---

[10] According to Liverpool, Castillo is an inmate in Liverpool's cellblock who was a violent gang member charged with murder.  Doc. 95 at 9.  Defendants have not identified this inmate.

On September 6, 2018, Liverpool was transferred from the AMKC to the Brooklyn Detention Complex.  Doc. 94-1 at 62.  On October 12, 2018, Liverpool entered state custody in Rhode Island, Doc. 99 at 13, where he currently resides, Doc. 112-1 at 5.

### B.  Procedural History

Liverpool filed the initial complaint on June 17, 2020, while he was incarcerated in Rhode Island, naming the City, Vaughn, and seven unidentified "John Doe" officers as defendants due solely to their respective roles in the September 3 Attack.  Doc. 1.  On August 7, 2020, the Court directed the City to provide Liverpool with the identities of the "John Doe" defendants.  Doc. 7 at 3–4.  Between August 7, 2020, and September 15, 2021, the City identified all but one of the "John Doe" defendants pursuant to a *Valentin* order.[11]  Docs. 12, 18, 22, 43, 45, 47, 49, 52.  Liverpool amended his complaint on March 23, and shortly thereafter on March 29, 2021, repeating substantially similar allegations regarding the September 3 Attack as those alleged in the initial complaint.  Doc. 35; Doc. 36.  On October 20, 2021, Liverpool filed his Third Amended Complaint ("TAC"), which again relied exclusively on the September 3 Attack as the basis for relief.  Doc. 56.  On December 27, 2021, Defendants moved to dismiss the TAC for failure to state a claim.  Doc. 61.  On September 28, 2022, the Court granted Defendants' motion to dismiss for failure to state a claim against all Defendants, but granted Liverpool leave to amend.  Doc. 76 at 12 (the "September 2022 Order").

Between October 2022 and January 2023, Liverpool repeatedly requested the release of the DOC's summaries of his 311 complaints to the Call Center, Doc. 77; Doc. 91, and video surveillance from Rikers Island, Doc. 87; Doc. 93.  Defendants produced summaries from Liverpool's 311 complaints, Doc. 79; Doc. 85; Doc. 94-1, and represented that the DOC does not retain security camera footage for more than ninety

---

[11] Liverpool later named John Doe #7 as "Captain Christian" (phonetically).  Doc. 27 at 1.  However, Defendants were unable to identify John Doe #7, and the Court relieved Defendants of the obligation to identify this John Doe.  Doc. 53.

days, which prevented them from producing relevant video from Liverpool's incarceration at the AMKC, Doc. 89 at 2.

On January 20, 2023, Liverpool filed the FAC alleging that, while he was incarcerated at the AMKC, the Defendants failed to protect him from—and even actively facilitated—abuse by other inmates on multiple occasions (including the September 3 Attack). Doc. 95. On March 17, 2023, Defendants filed the instant motion to dismiss on the basis that Liverpool's claims are frivolous, untimely, or insufficient to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. 98. On June 15, 2023, Liverpool, with the help of NYLAG, submitted his opposition to the instant motion. Doc. 112; Doc. 112-1.

## II.   LEGAL STANDARD

### A.  Federal Rule of Civil Procedure 12(b)(6)

When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). The court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also id.* at 681 (citing *Twombly*, 550 U.S. at 551). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible,

[the] complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 680.

The question in a Rule 12 motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Just. v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 278 (2d Cir. 1995)) (internal quotation marks omitted). "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits," and without regard for the weight of the evidence that might be offered in support of the plaintiff's claims. *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (internal quotation marks omitted).

### B. *Pro Se* Plaintiff

The Court holds submissions by *pro se* litigants to "less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)); *see also Young v. N.Y.C. Dep't of Educ.*, No. 09-cv-6621 (SAS), 2010 WL 2776835, at *5 (S.D.N.Y. July 13, 2010) (noting that the same principles apply to briefs and opposition papers filed by *pro se* litigants). Although "*pro se* status 'does not exempt a party from compliance with relevant rules of procedural and substantive law,'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)), courts read the pleadings and opposition papers submitted by *pro se* litigants "liberally and interpret them 'to raise the strongest arguments that they suggest,'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). The obligation to read a *pro se* litigant's pleadings leniently "applies with particular force when the plaintiff's civil rights are at issue."

*Jackson v. NYS Dep't of Lab.*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)).

## III.   DISCUSSION

### A.   *Monell* Claim

Liverpool acknowledges that his allegations are insufficient to state a § 1983 claim against the City.  Doc. 112 at 16; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).  Thus, Liverpool's claim against the City is dismissed.

### B.   Liverpool's Failure to Protect Claims

An individual may sue officials who, "acting under color of state law," *West v. Atkins*, 487 U.S. 42, 48 (1988), have "depriv[ed him] of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  42 U.S.C. § 1983.  Section 1983 "itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Okla. City v. Tuttle*, 471 U.S. 808, 816 (1985)).  Where a pretrial detainee alleges that correction officers failed to protect him from other inmates, his claim arises under the Due Process Clause of the Fourteenth Amendment. *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).  However, not "every injury suffered by one prisoner at the hands of another [] translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  A prison official violates constitutional protections when:  (1) the alleged deprivation is "objectively, sufficiently serious," and (2) the alleged perpetrator possesses a "sufficiently culpable state of mind." *Id.* (internal quotations omitted).  In prisons, courts have defined the requisite culpability as "'deliberate indifference' to the health and safety of inmates." *Randle v. Alexander*, 960 F. Supp. 2d 457, 470 (S.D.N.Y. 2013) (citing *Farmer*, 511 U.S. at 834).

*1. The September 3 Attack*

Liverpool's primary claim is—and has always been—that the Defendants failed to protect him from Bethune, which enabled the September 3 Attack. *See* Doc. 1; Doc. 95 at 1. In its September 2022 Order, the Court explained that Liverpool's familiarity with his attacker along with the prior threats and attacks he endured "could conceivably raise a factual question as to whether a substantial risk of serious harm existed." Doc. 76 at 7. In the FAC, Liverpool maintains that he was familiar with Bethune and had been previously threatened. Doc. 95 at 7. Accordingly, the Court similarly finds that Liverpool has raised a factual question as to whether a substantial risk of harm existed, which is sufficient to satisfy the objective prong of the *Farmer* test on this motion.

Under the subjective prong of the *Farmer* test, a prisoner can recover if an injury was the product of a prison official's "purposeful subjection of the prisoner to a 'substantial risk of serious harm' or from the official's deliberate indifference to that risk." *Fischl v. Armitage*, 128 F.3d 50, 55 (2d. Cir. 1997) (quoting *Farmer*, 511 U.S. at 834); *see also Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996) ("[T]o state a cognizable section 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice."). An official acts with deliberate indifference when he intentionally imposes the condition or "recklessly fail[s] to act with reasonable care to mitigate the risk that the condition pose[s] . . . even though [he] kn[ows], or should [] know[], that the condition pose[s] an excessive risk to health or safety." *Darnell*, 849 F.3d at 35. Applying this test in its September 2022 Order, the Court dismissed Liverpool's claim against all Defendants because he failed to allege facts sufficient to establish that any of the Defendants knew or should have known of a substantial risk of serious harm to him. Doc. 76 at 8. Therefore, the Court found that Liverpool failed to allege they acted with deliberate indifference to that risk. *Id.*

Defendants argue that Liverpool has again failed to allege that Defendants Smalls, Johnson, Foo, Vallejos, or Hossen were deliberately indifferent to a risk of serious harm to him. Doc. 99 at 18. With respect to Officer Vaughn, Defendants urge the Court to find that any new allegations from the FAC relating to her alleged conduct prior to the September 3 Attack are untimely. *Id.* at 14–16. Alternatively, Defendants contend that Liverpool's claim regarding the September 3 Attack should be dismissed against all Defendants because it is factually frivolous. *Id.* at 16–17.

> a. *Liverpool's Claims Against Defendants Smalls, Johnson, Foo, Vallejos, Hossen, and Hope[12] are Dismissed*

Defendants assert that Liverpool has not alleged that any Defendant other than Officer Vaughn knew about or should have known about an excessive risk to his safety when he was locked in his cell at night. *Id.* at 18. Specifically, they point out that Liverpool does not allege any of them witnessed any attacks or had any firsthand knowledge of the abuse he allegedly suffered. Doc. 115 at 11. Defendants also argue that Liverpool fails to assert that any of these Defendants received or knew about his prior grievances. Doc. 99 at 18. Even if they had received such grievances, Defendants argue that would not be enough. *Id.*; *Mateo v. Fischer*, 682 F. Supp. 2d 423, 430 (S.D.N.Y. 2010) ("[T]he receipt of letters or grievances, by itself, does not amount to personal involvement.").

Liverpool argues that these Defendants were reckless in failing to mitigate the risk of harm that they should have known Liverpool was facing. Doc. 112 at 13. In opposition to the instant motion, Liverpool asserts that the Defendants knew about the threat to him "for well over a year before the incidents" because they "directly observed

---

[12] Although Captain Hope has not appeared in this action, she is similarly situated in all material respects to Defendants Smalls, Johnson, Foo, Vallejos, and Hossen. Thus, the Court considers Defendants' arguments as applicable to Captain Hope. *Cf. Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (requiring courts to evaluate an absent defendant's liability as a matter of law before issuing a judgment against her).

the attacks by other prisoners, were told of the attacks by [Liverpool], or were aware of the attacks through grievances" he filed.[13]  *Id.* at 14.  Liverpool also claims that they knew that inmates left their cells if they were not properly locked, *id.* at 14–15, and that he had to be moved from two prior housing areas due to abuse he allegedly suffered, Doc. 112-1 at 2.  Liverpool further asserts that he filed numerous grievances with these Defendants regarding Bethune.  Doc. 112 at 15.  With this knowledge, Liverpool alleges, the Defendants failed to protect him from the September 3 Attack by failing to ensure inmates were properly locked in their cells.  *Id.* at 14.

The Court finds that Liverpool has failed to allege that these Defendants were "deliberately indifferent" to the substantial risk of serious harm he was facing.  The FAC is devoid of any allegation that these Defendants paid inmates to assault him, that they received Liverpool's grievances, or that they witnessed any of these assaults, except in purely conclusory terms in opposition to the instant motion.  *See generally* Doc. 95.  In fact, Liverpool never mentions any of these Defendants in the FAC in connection with prior assaults or attacks.  *Id.*  The FAC contains only conclusory allegations that the Defendants were "well aware" of the risks to his safety.  *Id.* at 2.  However, these allegations are completely lacking in detail, including the dates any prior attacks occurred and the names of the Defendants who witnessed them or received grievances about them. *See generally* Doc. 95.  Thus, Liverpool's claim against these Defendants constitutes an allegation that they acted negligently in failing to properly secure other inmates on the night of September 2, 2018.  This claim amounts to an "isolated omission to act" without any "evil intent, or recklessness."  *Knowles v. N.Y.C. Dep't of Corr.*, 904 F. Supp. 217, 221 (S.D.N.Y. 1995) (quoting *Ayers v. Coughlin*, 780 F.2d 205, 209 (2d Cir. 1985)). Having failed to establish that any of these Defendants were "deliberately indifferent" to

---

[13] In the FAC, Liverpool does not claim that any Defendant other than Officer Vaughn witnessed an attack against him or were told about any attacks against him.  *See generally* Doc. 95.

a risk he was facing, Liverpool's failure to protect claim is dismissed with respect to Defendants Smalls, Johnson, Foo, Vallejos, Hossen, and Hope.

> b.  *Liverpool's Claim Against Officer Vaughn is Not Dismissed*

In the FAC, Liverpool makes several new allegations that impact the Court's analysis of whether Officer Vaughn, in enabling the September 3 Attack, acted with a culpable mental state under the subjective prong of the *Farmer* test.  These allegations were not included in the previous iterations of the complaint.  Specifically, Liverpool now alleges that Officer Vaughn witnessed prior instances where Bethune attacked him, Doc. 95 at 7, allowed Castillo to contaminate his food, *id.* at 8, encouraged other officers to harass him, *id.* at 4, and paid inmates to assault him, *id.*  Meanwhile, Liverpool alleges, Officer Vaughn laughed about these abuses without intervening.  *Id.* at 5.

As the Court describes in greater detail below, these new allegations may not form the basis for new claims because the statute of limitations period for such claims has expired.  However, the Court may consider these allegations in deciding whether Liverpool has sufficiently plead that Officer Vaughn acted with a culpable mental state regarding the September 3 Attack.  Having alleged that Officer Vaughn knew about the prior assaults and that she turned off the lights, which enabled the September 3 Attack, Liverpool sufficiently states that Officer Vaughn acted with deliberate indifference to his safety under the subjective prong of the *Farmer* test.  *See Hayes*, 84 F.3d at 620; *Darnell*, 849 F.3d at 35 (providing that deliberate indifference is satisfied when the official intentionally imposes or fails to mitigate the substantial risk of harm a prisoner is facing).

> c.  *Liverpool's Claim Regarding the September 3 Attack is Not Frivolous*

Defendants also argue that the FAC should be dismissed against all Defendants because the facts alleged therein are frivolous.  Doc. 99 at 16–17.  Defendants compare Liverpool's claim to one where a plaintiff alleged correction officers rewarded other inmates for infecting him with bodily fluids and poison.  *Dorsey v. Fisher*, No. 09-cv-1011 (GLS), 2010 WL 2008966, at *2 (N.D.N.Y. May 19, 2010).  There, the court

dismissed the complaint after finding plaintiff's allegations to be "so outrageous and unbelievable as to be factually frivolous." *Id.* at *14. Defendants argue that Liverpool's allegations are similarly delusional and should thus meet the same fate. Doc. 115 at 10. Specifically, considering Liverpool's clarification that his cell had a door with an open slot for food (and was not one with metal bars as Defendants previously assumed), Defendants argue that it is "logistically improbable" that an inmate threw cleaning fluids through the open slot and into Liverpool's eyes while he was sleeping. Doc. 99 at 16.

Liverpool argues that Defendants fail to meet the very high bar required of them to enable the Court to dismiss a claim for factual frivolity. Doc. 112 at 10. Although the record is silent as to the size of the food slot, Liverpool points out that it is designed to allow objects to pass through it. *Id.* at 11. Thus, Liverpool concludes, it is not improbable that an inmate could reach through the food slot with a cup of bleach in his hand and throw the cup a few feet towards Liverpool's bed. *Id.*

The Court finds that Defendants have failed to demonstrate that Liverpool's claim regarding the September 3 Attack is frivolous. To enable the Court to dismiss a claim for factual frivolity, Defendants must show that the facts are not merely "unlikely" but rather "clearly baseless," "fanciful," or "delusional." *Denton v. Hernandez*, 504 U.S. 25, 32–33 (1992). Defendants do not dispute Liverpool's allegation that inmates sometimes place obstructions in their cell doors to enable them to exit their cells at night. *See generally* Doc. 99. Additionally, it is not fanciful or delusional that Bethune—having placed such an obstruction in his cell door—exited his cell, reached through the food slot in Liverpool's cell door with a cup of cleaning fluid, and threw the fluid towards Liverpool's face, splashing some of it into his eyes. Liverpool has satisfied the *Farmer* test with respect to Officer Vaughn, and the Court has determined his claim is not frivolous. Thus, his claim against Officer Vaughn regarding the September 3 Attack survives the Defendants' motion.

## 2. *Liverpool's Additional Failure to Protect Claims*

Liverpool states three new claims in the FAC that do not appear in his earlier complaints. *See generally* Doc. 95. Defendants urge the Court to dismiss these additional claims as time-barred pursuant to Federal Rule of Civil Procedure 15(c)(1)(B). Doc. 99 at 14. The statute of limitations for § 1983 actions filed in New York is three years. *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013). Thus, for conduct that occurred on September 6, 2018, the statute of limitations would ordinarily expire on September 6, 2021.[14] Defendants acknowledge that courts in this Circuit "have applied tolling orders issued by New York State Governor [Andrew Cuomo] during the coronavirus pandemic to federal filing deadlines." Doc. 99 at 14. Defendants calculate (and Liverpool does not dispute) that an extension of 229 days would appropriately account for these tolling orders. *Id.* Thus, applying this extension, a statute of limitations that expired on September 6, 2021, would extend to April 23, 2022.[15]

Notwithstanding the statute of limitations, a plaintiff is entitled to amend a complaint to add a claim that arises out of the "conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). In determining whether a new claim relates back to the original pleading, "the central inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations 'by the general fact situation alleged in the original pleading.'" *Stevelman v. Alias Rsch. Inc.*, 174 F.3d 79, 86–87 (2d Cir. 1999) (quoting *Rosenberg v. Martin*, 478 F.2d 520, 526 (2d Cir. 1973)). In other words, the "basic claim must have arisen out of the conduct set forth in the original pleading." *Slayton v. Am. Express Co.*, 460 F.3d 215, 228 (2d Cir. 2006) (internal

---

[14] All of Liverpool's claims relate to his period of incarceration at the AMKC, Doc. 95, which ended on September 6, 2018. Doc. 94-1 at 62.

[15] Defendants conclude that February 10, 2022, would be the applicable expiration date for conduct that occurred on September 6, 2018. *See* Doc. 99 at 14. The Court is unclear how Defendants arrived at this date, which is only 157 days after September 6, 2021. In any event, the discrepancy is irrelevant, as Liverpool's challenged allegations were made after the later date of April 23, 2022.

quotations omitted); *Oliner v. McBride's Indus., Inc.*, 106 F.R.D. 9, 12 (S.D.N.Y. 1985) (finding that the Court must determine whether there is a "common core of operative facts linking the amendments and the original complaint").  A "new legal theory . . . premised upon the same set of facts," relates back to the timely complaint. *Maccharulo v. Gould*, 643 F. Supp. 2d 587, 593 (S.D.N.Y. 2009); *see also Oliner*, 106 F.R.D. at 12 (finding that new allegations, which "amplify" or "specify" those set forth in the original pleading relate back).  However, if the "amended complaint relies on a whole new set of . . . operative facts not at issue in the original complaint," it is appropriate for the Court to dismiss the claim as untimely.  *Avila v. Riexinger & Assocs., LLC*, 644 F. App'x 19, 23 (2d Cir. 2016) (internal quotations omitted).

Defendants do not dispute that Liverpool's claim regarding the September 3 Attack is timely, as Liverpool filed his initial complaint on June 17, 2020, well within the limitations period.  Doc. 1.  However, Defendants argue that Liverpool's newly plead allegations are time-barred because they do not relate back to his original complaint.[16] Doc. 99 at 14–16.  Liverpool counters that these allegations are not newly alleged, but rather are amplifications of his earlier complaints.  Doc. 112 at 7.

   a.  *Liverpool's Claim that Officers Paid Inmates to Abuse Him is Untimely*

Defendants first take issue with Liverpool's claim that Officer Vaughn paid inmates to assault him.  Doc. 99 at 15.  Defendants argue this allegation is "categorically different" than Liverpool's prior complaints, none of which mentioned officers encouraging or provoking other inmates to attack him.  *Id.*  Instead, Defendants argue that Liverpool's first four complaints focused solely on the officers' purported negligence in failing to ensure that Bethune's cell was locked, which enabled the September 3 Attack. *Id.*; Doc. 115 at 6.  Defendants acknowledge that Liverpool previously, in opposition to Defendants' motion to dismiss the TAC, alleged that officers similarly paid inmates to

---

[16] Liverpool does not contest that any claim based on the DOC's denial of his vegan food is time-barred. Doc. 112 at 3 n.3.

assault him.  Doc. 71 at 1.  However, Defendants argue that this allegation was not made in a pleading.  Doc. 99 at 15.  Defendants also highlight that the opposition was filed in August 2022, which was itself beyond the statute of limitations for bringing a claim based on the alleged conduct, which expired in April 2022.  *Id.* at 15–16.

Liverpool contends that this claim is traceable back to his original complaint, in which he alleged that he was harmed as a "result of [the Defendants'] actions or lack [thereof]," Doc. 1 at 4, namely, the Defendants' failure to prevent prisoners from abusing him, Doc. 112 at 7.  Liverpool argues that these actions remained at the core of each of his complaints, but that the FAC merely amplifies the allegation by transforming the Defendants' mental state from unintentional to intentional.  *Id.* at 8.

The Court finds that any claim that the Defendants paid or provoked inmates to abuse Liverpool is untimely.  In the initial complaint, Liverpool asserts that the Defendants "knew or should have known" that he would be harmed by their actions. Doc. 1 at 4.  But the initial complaint was based only on the September 3 Attack. Nothing about this statement—nor anything else in Liverpool's first four complaints— alerts the Defendants to the possibility that Liverpool would also attempt to hold them liable for allegedly encouraging and compensating inmates to harass and abuse him.  *See generally* Doc. 1; Doc. 35; Doc. 36; Doc. 56.  To allege that the Defendants provoked inmates to abuse and harass Liverpool is not a "new legal theory . . . premised upon the same set of facts," but rather an entirely new set of facts to those alleged in the first four complaints.  *Maccharulo*, 643 F. Supp. 2d at 593.  Thus, the Court finds that Liverpool's allegation that officers paid inmates to harass and abuse him on a regular basis is not part of the "common core of operative facts" that links the FAC back to the earlier complaints. *Avila*, 644 F. App'x at 23; *Oliner*, 106 F.R.D. at 12.  Therefore, this claim is dismissed as untimely.

     *b.*   *Liverpool's Claim that Defendants Failed to Protect Him From Bethune and*
        *Castillo When They Threw Urine, Feces, and Objects at Him Apart from the*
        *September 3 Attack is Untimely*

Defendants also contend that Liverpool's new allegation that Bethune and Castillo threw urine, feces, and objects into his cell (separate from the September 3 Attack) is unrelated to his initial complaint. Doc. 99 at 15. Defendants argue that the earlier complaints, in which Liverpool alleged that the Defendants enabled Bethune to attack him with cleaning fluids on September 3, 2018, did not put them on notice of additional assaults he allegedly suffered. Doc. 115 at 8.

Liverpool asserts that the additional assaults he endured from Bethune and Castillo were part of the same "campaign of assaults and harassment by his fellow prisoners." Doc. 112 at 9. Thus, he argues they relate back to the original complaint where he alleged that he was "harassed, threatened, and assaulted by numerous inmates on a continuous basis." Doc. 1 at 5. Liverpool also confusingly argues that Defendants seek to dismiss his claim merely because he identified additional substances used in the assault he already alleged. Doc. 112 at 8–9. Liverpool points to the TAC, where he asserted that Bethune assaulted him with "a mixture of cleaning fluids, *et al.*" Doc. 56 at 2 (emphasis added). Thus, he argues that Defendants were on notice that he was assaulted with feces, urine, and objects in addition to cleaning fluids. Accordingly, these allegations relate back to the TAC because he "need not have specified . . . every fluid or object that he was assaulted with." Doc. 112 at 8–9.

However, the FAC does not merely identify different substances that were used in the September 3 Attack, as Liverpool suggests, but rather describes entirely separate attacks for which he intends to hold Defendants liable. Doc. 95 at 5. Thus, Liverpool's use of the phrase "et al." in the TAC to describe the fluids that were thrown at him during the September 3 Attack is irrelevant to determining whether these newly pleaded attacks relate back to the prior complaints. Liverpool never identified any of these other assaults

in the prior complaints.[17]  *See generally* Doc. 1; Doc. 35; Doc. 36; Doc. 56.  Thus, by claiming them now, Liverpool is not asserting a different legal theory but rather attempting to bring an entirely new claim based on a new set of facts not previously mentioned for which the Defendants could not have anticipated being held liable. *Maccharulo*, 643 F. Supp. 2d at 593.  Thus, the Court finds that any claim Liverpool intended to bring regarding these other assaults does not relate back to his earlier, timely complaints.

### c.  *Liverpool's Claim that Castillo Tampered with His Food is Untimely*

Finally, Defendants argue that Liverpool's allegation that Officer Vaughn allowed inmates to ejaculate into his food is completely unrelated to Liverpool's earlier complaints, which focused on the September 3 Attack.  Doc. 115 at 6.  Liverpool responds that Castillo's tampering with his food was part of the same "campaign of assaults and harassment by his fellow prisoners," Doc. 112 at 9, and relates back to his allegation that he was "harassed, threatened, and assaulted by numerous inmates on a continuous basis," Doc. 1 at 6.

The Court finds that this also is an entirely new fact that in no way is connected to the September 3 Attack.  Although Liverpool may have claimed to have been assaulted on several instances in his original complaint, Liverpool did not state an intention to hold Defendants liable for those earlier assaults.  *See generally* Doc. 1.  Thus, there is no link that connects this allegation to one that was timely pleaded in any of the four prior complaints.  Therefore, any claim that Liverpool sought to bring related to Defendants' failure to protect him from this incident is dismissed as untimely.

---

[17] The Court notes that none of the thirteen 311 complaints Liverpool filed during his incarceration at the AMKC mention Bethune, Castillo, or any assaults he allegedly endured other than the 311 complaint regarding the September 3 Attack.  *See* Doc. 94-1.

### C. Qualified Immunity

Defendants argue that even if the Court finds Liverpool has stated a Fourteenth Amendment failure to protect claim, it should grant the individual Defendants qualified immunity.  Doc. 99 at 22.  As the Court stated in its September 2022 Order:

> A government official sued in his individual capacity is entitled to qualified immunity (1) if the conduct attributed to him was not prohibited by federal law; (2) where the conduct was so prohibited, if the plaintiff's right not to be subjected to such conduct by the defendant was not clearly established at the time it occurred; or (3) if the defendant's action was objectively legally reasonable in light of the legal rules that were clearly established at the time it was taken.

Doc. 76 at 9 (citing *Manganiello v. City of N.Y.*, 612 F.3d 149, 164 (2d Cir. 2010)).  In its September 2022 Order, the Court found that even if Liverpool had sufficiently alleged a § 1983 claim, the individual Defendants were entitled to qualified immunity because Liverpool failed to allege that any of them acted unreasonably.  *Id.*

Defendants urge the Court to reach the same result here because it was objectively reasonable for Defendants to believe that Liverpool did not face a substantial risk of serious harm while he was locked in his own cell.  Doc. 99 at 22.  Thus, they argue that even if they were negligent in failing to check the cell doors for obstructions, they did not act unreasonably.  *Id.*  Defendants contend that, at the very least, the individual Defendants other than Officer Vaughn are entitled to qualified immunity even if she is not.  Doc. 115 at 12.  Defendants argue that apart from conclusory assertions, Liverpool never alleged that any Defendants except for Officer Vaughn knew of any prior attacks.  *Id.*  Liverpool counters that it was unreasonable for the officers to believe he was safe in his cell when similar assaults occurred on six other occasions.  Doc. 112 at 16.  Thus, Liverpool claims, the Defendants acquiesced in the repeated assaults.  *Id.*

The Court finds that Defendants Smalls, Johnson, Foo, Vallejos, Hossen, and Hope are entitled to qualified immunity.  Under the third prong of the *Manganiello* test, Liverpool must allege facts demonstrating that these Defendants acted "with deliberate indifference toward the safety of the prisoner."  *Gordon v. City of N.Y.*, No. 05-cv-0351

(PR), 2005 WL 2899863, at *1 (2d Cir. Nov. 3, 2005) (citing *Hayes*, 84 F.3d at 620–21). As previously discussed, Liverpool failed to allege with specificity that any of these Defendants knew of any prior attacks. Thus, Liverpool has failed to allege that they acted unreasonably or with deliberate indifference to his safety by neglecting to check the cell doors for obstructions. The substantial deference due to prison officials allows them to use their professional judgment to reach experience-based conclusions that work to further prison objectives. *Beard v. Banks*, 548 U.S. 521, 533 (2006). Thus, Defendants Smalls, Johnson, Foo, Vallejos, Hossen, and Hope are entitled to qualified immunity with respect to Liverpool's claims.

However, the Court finds that Officer Vaughn is not entitled to qualified immunity because it cannot find that her actions, as alleged in the FAC, were "objectively, legally reasonable." *Manganiello*, 612 F.3d at 164. In the FAC, Liverpool newly alleges that Officer Vaughn witnessed similar assaults that Liverpool suffered prior to the September 3 Attack and knew that Liverpool was the target of substantial abuse by other inmates and staff. Doc. 95 at 3–5, 7–8. With this knowledge, Officer Vaughn allegedly turned off the hallway lights and acquiesced in the September 3 Attack. *Id.* at 6. Thus, Officer Vaughn has not proven that her actions, as alleged in the FAC, were reasonable to entitle her to qualified immunity on this motion.

### D.  Leave to Amend the Complaint

Liverpool has requested leave to amend the FAC. Doc. 112 at 17. Courts are instructed to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Second Circuit also urges district courts to provide *pro se* litigants the opportunity to amend a complaint when there is any indication that a valid claim might be stated. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). However, "it is within the sound discretion of the district court to grant or deny leave to amend" for "good reason, including undue delay, bad faith, futility of amendment, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).

"Generally, the failure to fix deficiencies in an initial pleading, after being provided notice of those deficiencies, is alone sufficient ground to deny leave to amend." *Bischoff v. Albertsons Cos., Inc.*, No. 22-cv-4961 (CS), 2023 WL 4187494, at *7 (S.D.N.Y. June 26, 2023) (citing *Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257–58 (2d Cir. 2018)).

Liverpool filed the initial complaint on June 17, 2020—over three years ago. Doc. 1. The Court has granted Liverpool leave to amend his complaint four times, including once after the Court issued an opinion on the merits of his claim. Doc. 1; Doc. 35; Doc. 36; Doc. 56; Doc. 95. Additionally, the Court has allowed Liverpool's § 1983 claim to proceed against Officer Vaughn. The Court declines to grant Liverpool another opportunity to fix the deficiencies in his complaint with respect to the remaining Defendants. Therefore, Liverpool's FAC will be dismissed with prejudice as to all Defendants except for Officer Vaughn.

## IV.   CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is DENIED as to Officer Vaughn but GRANTED with prejudice as to the remaining Defendants. The Clerk of Court is respectfully directed to terminate the City of New York, Kisa Smalls, Assistant Deputy Warden Ainsworth Foo, Captain Delilah Hope, Ernesto Vallejos, Officer Milton Hossen, and Deputy Warden Chantelle Johnson as defendants and the motion, Doc. 98, and mail a copy of this Order to Liverpool.

It is SO ORDERED.

Dated:   November 15, 2023
            New York, New York

_____
            EDGARDO RAMOS, U.S.D.J.